## THE LAURETTA SPEDDEN.

(District Court, D. Maryland. April 7, 1909.)

COLLISION (§ 95*)—RIVERS—NEGLIGENCE.

A collision in the daytime between a sailing vessel and a scow in tow of a tug in a river *held*, on the evidence, due solely to the fault of the tug, and that the vessel as required kept her course and speed until the collision was imminent, when she made a change of course which nearly avoided the collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty. Suit by Robert L. Rogers, owner of the bugeye Nettie Allison against the steam tug Lauretta Spedden. Decree for libelant.

Milton Roberts, for libelant.
Dallam & Marbury, for respondent.

MORRIS, District Judge (orally). This was a collision between a small sailing vessel and an empty scow in tow of the steam tug Lauretta Spedden. It took place about 9 o'clock on the morning of July 31, 1908, in the Patapsco river about half way between the entrance of the Baltimore Harbor and Ft. Carroll. The bugeye was proceeding on a southeast course down the river having up her mainsail, foresail, and jib, with a fresh 14-mile breeze from the northeast. Her master was at the wheel and two colored sailors forward. The case for the sailing vessel is that when she had cleared the harbor she saw the tug and tow to the leeward about a mile and a half to two miles off; that the sailing vessel kept her course, but the tug in approaching crossed the course of the sailing vessel from the sailing vessel's starboard to port, and the scow, being about 300 feet behind the tug and more to the leeward, collided with the sailing vessel; that the master of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sailing vessel when he saw that a collision with the scow was immi-
nent put his wheel to port and let her main sheet run off, bringing the
sailing vessel's head to the starboard and before the wind, and nearly
clearing the scow, but they came together, the sailing vessel striking
head on near the corner of the scow with such violence that the bug-
eye sank and her master was injured.

The case for the tug made by the answer is that while the tug was
coming up the river with the empty scow on a 50-fathom hawser they
saw the bugeye approaching under full sail coming rapidly down the
river on a course parallel to the course of the tug and about 250 feet
to the westward. That when the bugeye was nearly abreast of the tug
and about 250 feet to the port side of the tug, the master of the
bugeye put his wheel to starboard and began to haul down her
mainsail, and the bugeye began to luff to her port; that the tug
blew warning whistles, and the master of the bugeye seeming to see
the scow put his wheel to port, and threw the head of the bugeye to
starboard and collided with the scow, bow on.

The story of the answer, on behalf of the tug, is so improbable
that, upon consideration of all the testimony, I am constrained to
accept the account given by those on the bugeye. That the bugeye,
having a fair wind, for the course she desired to make should,
when abreast of the tug, and for no reason one can imagine, have
hauled down her mainsail and luffed up into the wind, is not credible.
If that had been done, the bugeye would have lost her speed. That
she did not lose her speed is testified to by the witnesses, and is
shown by the force with which she struck the scow. It is much more
probable that the strong 14-mile breeze from the north and east,
acting upon the empty scow at the end of a 50-fathom hawser, caused
the scow to sag over to the westward and across the course of the
bugeye, and that its sagging was not observed by those on the tug.
All the law required of the bugeye was that she should keep her
course and speed, and that, I think, she did until the collision was
imminent, when she made a change of course which nearly avoided the
collision.

The answer and the witnesses for the respondent assert that the
master of the bugeye was befuddled with drink, but I am not con-
vinced that it was so. He brought the bugeye safely out of the
harbor in a high wind, and was on his proper course down the river
with a fair wind. He had nothing to do but keep his course so far
as the steam tug was concerned, and that at least he appears to have
had sense enough to do and to save himself from a sinking vessel.

I find the tug solely to blame for the collision, and will sign a
**decree in favor of the libelant.**